# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JOSE OSMIN CALDERON PACHECO, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil No. 3:11-cv-221** |
| | ) | **Judge Aleta A. Trauger** |
| CITY OF SPRINGFIELD, TENNESSEE; | ) | |
| SPRINGFIELD POLICE DEPARTMENT; | ) | |
| MIKE WILHOIT, individually and in his | ) | |
| official capacity as Chief of the Springfield | ) | |
| Police Department; WILL JOHNSON, | ) | |
| individually and in his official capacity as an | ) | |
| Officer of the Springfield Police Department; | ) | |
| and JOHN DOES 1-5, individually and in their | ) | |
| official capacities as Police Officers of the | ) | |
| Springfield Police Department, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

The City of Springfield, Tennessee (the "City"), the Springfield Police Department ("SPD"), and SPD Chief Mike Wilhoit (collectively, the "City Defendants") have filed a Motion for Summary Judgment (Docket No. 63), to which the plaintiff has filed a Response (Docket No. 81), and the City Defendants have filed a Reply (Docket No. 85). For the following reasons, the motion will be granted.

## FACTS

This action arises from a physical altercation that occurred between the plaintiff, Jose Osmin Calderon Pacheco, and one of the defendants, SPD Officer Will Johnson, in the late evening and early morning hours of March 13 and March 14, 2010. The altercation between the two men ultimately culminated in Officer Johnson's shooting Mr. Pacheco, leaving Mr. Pacheco paralyzed. Mr. Pacheco has sued Officer Johnson and the City Defendants for deprivation of his

federal constitutional rights, pursuant to § 1983, and for assault and negligence under Tennessee law.

## I.      __The March 13-14, 2010 Incident__[1]

On the night of March 13, 2010, Mr. Pacheco was sitting in his truck, which was parked on the side of a residential cul-de-sac, drinking beer and talking on his cell phone. At roughly 11:45 p.m., Officer Johnson pulled his patrol car behind Mr. Pacheco's truck. As Officer Johnson approached the truck, Mr. Pacheco stepped out to inquire if he could be of any assistance. According to Mr. Pacheco, Officer Johnson asked him, in English, what he was doing, and Mr. Pacheco replied, in English, that he lived nearby. At this point, Mr. Pacheco had his hands in the pockets of his coat, which contained his cell phone and keys. Officer Johnson instructed Mr. Pacheco, in English, to remove his hands from his pockets, which Mr. Pacheco did, apologizing and stating that he "didn't understand a lot of English." (Docket No. 66-2 (Dep. J. Pacheco (July 15, 2014)), at 122:21–25.) During this interaction, Officer Johnson asked Mr. Pacheco in both English and Spanish for his complete address, and Mr. Pacheco responded, in English, "I live here." (Docket No. 81, p. 2; *accord* Docket No. 66-1 (Dep. J. Pacheco (July 14, 2014)), at 53:3–8.) While the two men spoke, Mr. Pacheco again put his hands in his pockets to keep them warm, and Officer Johnson instructed him, again in English, to remove them,

---

[1] The City Defendants' Motion argues that they are not liable for any deprivation of Mr. Pacheco's constitutional rights and, as such, it does not address the constitutionality of Officer Johnson's actions on March 13, 2010. With the exception of Mr. Pacheco and Officer Johnson's ability to communicate with each other in both English and Spanish during the incident, the City Defendants have not disputed Mr. Pacheco's version of the physical altercation with Officer Johnson. The court must construe all facts in the light most favorable to the non-movant (here, the plaintiff) when considering a motion for summary judgment, and, therefore, unless otherwise noted, the facts recounted in this section are drawn from the Complaint (Docket No. 1) and Mr. Pacheco's deposition testimony regarding the events of that night (Docket Nos. 66-1–66-3, 83-1).

which Mr. Pacheco did.

According to Mr. Pacheco, Officer Johnson then became aggressive with him. Officer Johnson "threw" Mr. Pacheco against the hood of the truck and instructed him, in Spanish, to put his hands on the hood. (Docket No. 66-1 (Dep. J. Pacheco (July 14, 2014)), at 51:8-11.) Mr. Pacheco asked Officer Johnson why he was being arrested, and Officer Johnson attempted to perform a "pat down" of Mr. Pacheco. Mr. Pacheco became afraid of Officer Johnson, and, believing that Officer Johnson intended to place him in handcuffs, attempted to run away. Officer Johnson pursued Mr. Pacheco and eventually caught him by the back of the neck. A physical fight ensued between the two men, and Officer Johnson used pepper spray on Mr. Pacheco. Mr. Pacheco continued to struggle with Officer Johnson, who pulled his baton from its holster and used it to hit Mr. Pacheco. Officer Johnson ordered Mr. Pacheco, in English, to get on the ground, and Mr. Pacheco asked, in English, if Officer Johnson would stop hitting him if he did. (Docket No. 66-2 (Dep. J. Pacheco (July 15, 2014)), at 128:1–129:18.) Officer Johnson responded that he would. (*Id.*)

Mr. Pacheco did not get on the ground and, instead, began to grab the baton that Officer Johnson was using to hit him. Mr. Pacheco managed to wrest the baton away from Officer Johnson. After he obtained the baton, Mr. Pacheco claims that he threw it to his side and, still facing Officer Johnson, began to retreat toward the steps of his house. Officer Johnson then shot Mr. Pacheco, once in the hand while he was standing and, while Mr. Pacheco was falling or had already fallen to the ground, three times in the back at point blank range. Mr. Pacheco was transported to Vanderbilt University Medical Center for treatment. One of the bullets pierced his spinal cord, and Mr. Pacheco is now permanently paralyzed from the waist down.

## II. Springfield Police Department Policies and Training[2]

### A. Officer Hiring and Training

The SPD has formal policies that govern the hiring and certification of all SPD officers, including Officer Johnson. All SPD officers are required to be graduates of an approved law enforcement training academy and certified to serve as law enforcement officers by the Peace Officers and Standards Training Commission ("POST"). When Officer Johnson applied to the SPD in 2003, he was required to comply with all of these requirements. The SPD ran a full background check on Officer Johnson – including information about his education, criminal history, and driving history – and contacted his references. Officer Johnson was also interviewed by either Chief Wilhoit or Assistant Chief Danny Johnson (no relation), and he passed all of the required physical and psychological testing.

The SPD also has formal policies that govern the training of all SPD officers, including their use of service weapons and force – both lethal and non-lethal. Once he was hired, Officer Johnson was required to, and did, satisfactorily complete the SPD Field Training Officer ("FTO") program before he could serve as a full-service officer. During this training, Officer Johnson received and reviewed the SPD policies and procedures manual, and he received updates to this manual throughout his tenure with the SPD. SPD's policy on the use of force states that officers will use physical force only when "the exercise of persuasion, advice, and

---

[2] Unless otherwise noted, the facts recounted in this section are drawn primarily from the City Defendants' Statement of Undisputed Material Facts (Docket No. 65) and Mr. Pacheco's response thereto (Docket No. 82). This section also contains facts from the City Defendants' Motion for Summary Judgment and Memorandum of Law in Support thereof (Docket Nos. 63, 64), Mr. Pacheco's Response Memorandum (Docket No. 81), and the defendants' Reply (Docket No. 85), that are not refuted or contradicted by the opposing party or the record. Where there is a genuine dispute of fact, the court will construe the fact in the light most favorable to Mr. Pacheco as the non-moving party.

warning are found to be insufficient to obtain cooperation," and they will use "only the minimum degree of such physical force necessary on any particular occasion." (Docket No. 70-2 (SPD Use of Force Policy).) SPD's policy further provides that, after attempting to use physical restraint without injury to the subject, an officer who finds it necessary to use force must follow the use-of-force continuum, "[t]he order of force being: (1) Chemical Warning, (2) Use of hands and/or physical restraint, (3) Use of the baton (straight or [extending]), and (4) as a last resort, the firearm may be utilized." (*Id.*) The policy on firearms provides that deadly force may be used only if the officer has probable cause to believe the individual poses a significant threat of death or serious injury to the officer or others, and a warning, if feasible, has been given. (Docket No. 70-1 (SPD Firearms Policy).)

After their completion of the FTO program and instatement as full-service officers, SPD officers are required to complete at least 40 hours of POST-approved in-service training annually. The subject matter of this training varies from year to year but has included topics such as firearms training, defensive tactics, domestic violence, and emergency vehicle operation. Additionally, each officer must qualify annually with each of his service weapons, which can include chemical sprays such as pepper spray, a baton, and multiple firearms. In order to qualify with a weapon, Tennessee state standards require that an officer score at least 75% on a standardized test. The SPD has chosen to implement a higher standard than required by the State, and it requires an annual score of at least 80% to qualify with a service weapon. At all times during his service with the SPD, Officer Johnson maintained full POST certification and satisfied all state and SPD training requirements.

All SPD patrol officers are also required to participate in a POST-approved 20-hour introductory Spanish class. Officer Johnson took this course in 2008, and he received a

certificate of training. As Mr. Pacheco has noted, however, the SPD has no written policies "that identify operational steps for officers to follow" during interactions with persons who do not speak English (Docket No. 91-1, p. 18) and, according to Mr. Pacheco, one out of every five people encountered by Officer Johnson during his patrols were "Hispanic" (Docket No. 81, p. 8).[3] Mr. Pacheco provides no additional information regarding the relative number of Hispanic residents of the City who have difficulty understanding or speaking English.

### B. Officer Review and Discipline

All SPD officers, including Officer Johnson, are given performance evaluations annually, and Officer Johnson has scored satisfactorily on all of his annual evaluations. The SPD also utilizes a citizen complaint process and use-of-force reports to supervise and evaluate the performance of its officers. An officer is required to complete a use-of-force report after any incident in which the officer uses a weapon (chemical spray, baton, or firearm), or after any incident in which injury results from the officer's use of force, including hand-to-hand combat. These reports are then reviewed by supervisors at the SPD to ensure that the officers' actions are in compliance with SPD policies and training and to determine if additional policies or training are needed. Other than the incident giving rise to the present action, Officer Johnson has never been the subject of an excessive force complaint, nor has he used deadly force.

SPD protocol mandates that, after an officer-involved shooting, an outside agency must conduct an investigation. Consistent with this protocol, upon learning that Officer Johnson had

---

[3] Mr. Pacheco provides no citation to the record to support this statement, but he implies that support can be found in Officer Johnson's deposition testimony or discovery responses. (Docket No. 81, p. 8.) The record does not contain any of Officer Johnson's discovery responses, and the limited deposition testimony (placed into the record by the City Defendants, not by Mr. Pacheco) contains no mention of the Hispanic population in Springfield. The City Defendants did not, however, dispute this fact in their Reply.

shot Mr. Pacheco, Chief Wilhoit directed Assistant Chief Johnson to contact the Tennessee Bureau of Investigation ("TBI") to investigate. The TBI dispatched Agent Charles Rountree, who ultimately concluded that Officer Johnson had followed the mandated use-of-force continuum and that his use of force was not excessive under the circumstances. In addition to the TBI investigation, Chief Wilhoit conducted an internal investigation into the shooting to determine whether Officer Johnson had violated any SPD policies.[4] After speaking with Officer Johnson and Agent Rountree, reviewing video from Officer Johnson's dashboard camera, and reviewing statements from other officers who arrived later at the scene, Chief Wilhoit determined that Officer Johnson had not violated any SPD policy during the incident[5] but, rather, had acted justifiably. Officer Johnson was never disciplined in relation to the shooting of Mr. Pacheco.

During Chief Wilhoit's twenty-one year tenure as head of the SPD, there have been, in addition to the present case, only two uses of deadly force by SPD officers. During that time, there were also, other than this case, only two complaints of alleged excessive force. One complaint of excessive force occurred in 2005 and, after an internal investigation was conducted, the SPD determined that the officer did not use excessive force, and the officer was not disciplined. The other complaint of excessive force occurred in the mid- to late-1990s. Following an investigation into this complaint, the SPD determined that the use of force was not justified, and both officers involved in the incident were terminated. During his time at the SPD,

---

[4] In an apparent oversight, Mr. Pacheco failed to respond to this fact in his Response to the Defendants' Statement of Undisputed Material Facts. (Docket No. 82 ¶¶ 44–46.) The court notes, however, that Mr. Pacheco has placed nothing in the record to refute this fact, nor has he contested the assertion of this fact in his Response to the City Defendants' Motion for Summary Judgment.

[5] *See supra* note 4.

Chief Wilhoit was not aware of any custom within the SPD that allowed or encouraged the unconstitutional use of force by SPD officers.

## PROCEDURAL HISTORY

Mr. Pacheco filed suit against Officer Johnson and the City Defendants on March 10, 2011.[6] (Docket No. 1.) The Complaint alleges (1) a claim pursuant to 42 U.S.C. § 1983 for the deprivation of Mr. Pacheco's Fourth and Fourteenth Amendment rights against all defendants and (2) "claims under Tennessee law" that appear to constitute a claim of assault against Officer Johnson, a claim of vicarious liability for Officer Johnson's assault against the City Defendants, and a claim of negligence against all defendants. (*Id.* ¶¶ 30–64.) Mr. Pacheco requests compensatory and punitive damages against all defendants as well as attorney's fees and costs. (*Id.* at p. 24.) The City Defendants and Officer Johnson filed Answers to the Complaint on May 18 and May 19, 2011, respectively. (Docket Nos. 21, 22.)

After discussion with the parties, and in light of a related criminal charge that was pending against Mr. Pacheco, the court concluded that "very little, if anything, can be accomplished [through] discovery until the criminal case is finally resolved." (Docket No. 28.) Accordingly, on October 24, 2011, the court ordered the case to be administratively closed until the criminal case had been resolved, or for other good cause shown. (*Id.*) The criminal charge against Mr. Pacheco was resolved on November 7, 2012 (Docket No. 29), and the case was

---

[6] Mr. Pacheco also asserted claims against five John Does – unnamed SPD officers – alleging that they were deliberately indifferent to his serious medical need when they arrived on the scene after he had been shot. (Docket No. 1 ¶¶ 36, 62.) It has now been nearly five years since Mr. Pacheco filed the Complaint, and he still has not identified these John Does; nor does it appear that he could currently amend the Complaint to do so. *See Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008) (concluding that substituting a named defendant for a "John Doe" defendant is considered a change in parties, not a mere substitution of parties, and a plaintiff must, therefore, name the unidentified party before the statute of limitations runs on his claim).

reopened on December 7, 2012 (Docket No. 30).[7]

After multiple motions to extend discovery deadlines and the trial date (Docket Nos. 37, 41, 47, 49), the City Defendants filed a Motion for Summary Judgment on April 20, 2015 (Docket No. 63).[8]  In the Memorandum supporting the Motion, the City Defendants argue that they cannot, as a municipality and as an officer of the municipality sued in his official capacity, be held liable under § 1983 for any deprivation of Mr. Pacheco's constitutional rights associated with the shooting.  (Docket No. 64.)  Specifically, the City Defendants argue that no municipal custom or policy (official or unofficial) – nor any alleged failure to train, discipline, or supervise Officer Johnson – caused any violation of Mr. Pacheco's constitutional rights.  (*Id.* at pp. 13–27.) In support of the Motion, the City Defendants attached a Statement of Undisputed Material Facts and multiple exhibits, including deposition testimony, affidavits, and portions of SPD policies regarding weapons and use of force.  (Docket Nos. 65–71.)

On May 27, 2015, Mr. Pacheco filed a Response in opposition to the Motion (Docket No. 81), along with a Response to the City Defendants' Statement of Undisputed Material Facts, the affidavit and expert report of Dr. Michael Lyman, a few excerpts of deposition testimony, and two initial disclosures by experts retained by the City Defendants and Officer Johnson (Docket Nos. 82–84).  In his Response, Mr. Pacheco advances multiple grounds for the City Defendants' liability for Officer Johnson's actions, but he also appears to abandon certain of the grounds for municipal liability originally alleged in the Complaint.  As best as the court can discern from the Response, Mr. Pacheco now argues that the City Defendants are liable for the

---

[7] This case was assigned to this court on August 19, 2015, following recusal by Senior Judge John Nixon.  (Docket No. 87).

[8] Officer Johnson did not file a Motion for Summary Judgment, which, pursuant to court order, would also have been due on April 20, 2015.  (*See* Docket No. 61.)

deprivation of his constitutional rights on the basis of (1) the inadequacy of officer training regarding the use of force, (2) the lack of policies and inadequacy of training regarding officer communication and interaction with non-English speakers, and (3) Chief Wilhoit's ratification of Officer Johnson's allegedly unlawful conduct by failing to discipline him. (Docket No. 81, pp. 5–14.)[9] The City Defendants filed a Reply with accompanying exhibits on June 8, 2015. (Docket Nos. 85, 86.)

In reviewing the briefings, the court noticed what appeared to be a discrepancy between the expert report of Dr. Lyman originally submitted by Mr. Pacheco (Docket No. 83-2) and Mr. Pacheco's citations to, and quotations of, an expert report by Dr. Lyman in his Response (Docket No. 81). The court ordered Mr. Pacheco to re-file the intended version of Dr. Lyman's expert report (Docket No. 90), and Mr. Pacheco did so on February 2, 2016 (Docket No. 91).

## **EXPERT OPINION AND REPORT**

In support of his argument that municipal liability applies to the City Defendants, Mr. Pacheco submits the affidavit and expert report of Dr. Lyman, a professor at the Columbia College Department of Criminal Justice and Human Services in Columbia, Missouri. Dr. Lyman has a background as a generalist police instructor and criminal investigator and earned his doctorate in Higher and Adult Education from the University of Missouri-Columbia. (Docket No. 91-1, p. 2.) He states that he is nationally recognized in the fields of "police procedure, criminal investigation, drug enforcement, and related areas." (*Id.*) In his affidavit and expert report, Dr. Lyman offers opinions regarding (1) SPD training on the use of force, (2) SPD

_____

[9] The bases for municipal liability that have been abandoned in Mr. Pacheco's Response include (among others discussed below) the City Defendants' alleged failure to (1) adequately screen prospective law enforcement personnel (Docket No. 1 ¶¶ 53, 57), (2) adequately monitor and evaluate the performance of SPD officers (*id.* ¶ 54), and (3) provide adequate and necessary training as to the appropriate medical care to be provided to an injured arrestee (*id.* ¶ 47).

policies and training regarding officer interaction and communication with non-English speakers, and (3) the results of Chief Wilhoit's investigation of the shooting.

First, Dr. Lyman opines, in his affidavit, that "Chief Wilhoit and his department failed to provide proper training to Officer Will Johnson and the other officers of the Springfield Police department regarding the appropriate use of deadly force." (Docket No. 83-2 ¶ 3.) The affidavit does not, however, contain any description of SPD training (or even policies) regarding the use of force or outline any reasoning supporting this opinion. Further, no mention of this opinion – or of SPD policies or training on the use of force – can be found in Dr. Lyman's expert report.

Second, Dr. Lyman states that the City Defendants (1) failed to promulgate written directives "that identify operational steps for officers to follow" during interactions with persons who do not speak English (Docket No. 91-1, p. 18) and (2) provided inadequate training to SPD officers "in the use of the Spanish language and Hispanic cultural norms" (Docket No. 83-2 ¶ 4). Dr. Lyman notes that "the City of Springfield had experienced a significant Hispanic population growth in recent years," and that "[i]t was therefore likely and predictable that its police officers would at some point have confrontations with Hispanics." (*Id.* ¶ 5.) Dr. Lyman then states that, in light of this demographic change, "[t]he need to adequately train [SPD] officers in language and cultural differences was so obvious that the failure to do so was an act of deliberate indifference" by the City Defendants. (*Id.*) Dr. Lyman also states that, had the City Defendants promulgated written policies regarding communication with non-English speakers and properly trained Officer Johnson in the same, "it is likely that [Officer] Johnson's encounter with [Mr.] Pacheco would have been such that [Mr.] Pacheco would not have been shot." (Docket No. 91-1, p. 18.) Neither the affidavit nor the report, however, actually describes any policy that Dr. Lyman contends should have been implemented, nor does it outline any reasoning supporting the

opinion that the deficiencies in SPD's training program – the Spanish language course – were "obvious." Dr. Lyman discusses no nationwide standard for policies and training regarding officer interaction with non-English speakers, nor does he cite any studies on the efficacy of these policies or provide, as an example, any other police departments that have such policies or training in place.

Finally, Dr. Lyman offers his opinion that Chief Wilhoit "condoned, acquiesced in, authorized, and ratified" Officer Johnson's "use of excessive force" by "failing to discipline [him] for his conduct and in fact endorsing it." (Docket No 83-2 ¶ 9.) Dr. Lyman further opines that Chief Wilhoit failed to hold Officer Johnson accountable for the March 13, 2010 incident when he failed to investigate or discipline Officer Johnson. This opinion appears to be based entirely upon (1) Chief Wilhoit's testimony that Officer Johnson acted within SPD guidelines on March 13, 2010, and (2) Assistant Chief Johnson's testimony that Officer Johnson had not been disciplined after the March 13, 2010 incident. Dr. Lyman does not, however, acknowledge the investigations conducted by the TBI or Chief Wilhoit, which both came to the conclusion that Officer Johnson was justified in the use of force and which Mr. Pacheco has not disputed, nor does Dr. Lyman describe how those investigations were in any way deficient.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City*

*of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

In his Response, Mr. Pacheco waives certain of the claims and bases for liability that are alleged in his Complaint. Specifically, Mr. Pacheco concedes that (1) after discovery, there is no factual basis for individual liability against Chief Wilhoit (Docket No. 81, p. 5); (2) the claim against Chief Wilhoit in his official capacity is, in effect, a claim against the City of Springfield, which has already been named as a defendant in this matter (*id.*); and (3) the SPD is not a proper party to this suit (*id.*; *see also Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (rejecting a § 1983 claim against township police department because it was a division of the township and not a separate legal entity susceptible to liability)). Mr. Pacheco further states that he does not intend to pursue any state law claim against the City Defendants. (Docket No. 81, p. 5.) Accordingly, Mr. Pacheco's claims against Chief Wilhoit and the SPD, as well as his state law claims against the City, will be dismissed. Thus, the only remaining claim against any of the

City Defendants is Mr. Pacheco's § 1983 claim against the City.

The court now turns to the question of whether Mr. Pacheco's § 1983 claim against the City can survive summary judgment. A government entity such as the City cannot be held liable under § 1983 on the basis of *respondeat superior* for the actions of its employees but can only be held liable if the plaintiff demonstrates that the alleged federal violation was a direct result of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Typically, before determining whether the municipality is liable for a constitutional violation, the court must first determine "[w]hether the plaintiff has asserted the deprivation of a constitutional right at all." *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 505 (6th Cir. 1996). In this instance, however, the parties have not fully briefed this issue, and Officer Johnson – who is responsible for the conduct alleged to be unconstitutional – is not a party to this motion. The court will, therefore, proceed to the narrow question raised in the motion: even if Officer Johnson did violate Mr. Pacheco's constitutional rights, is there any basis – as a matter of law – for the City to be held liable. For the reasons discussed herein, the court answers this question in the negative and finds that the § 1983 claim against the City must be dismissed.

In order to establish a basis for municipal liability under *Monell*, a plaintiff must demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). After identifying one of these illegal municipal policies or customs, the plaintiff must further demonstrate a "direct causal link between the custom and the constitutional deprivation; that is, []he must show that the particular injury was incurred *because* of the

execution of that policy." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015) (quoting *Doe*, 103 F.3d at 508). Mr. Pacheco advances three separate grounds to establish the existence of an illegal policy or custom by the City Defendants that is linked to the alleged deprivation of his constitutional rights: (1) the SPD's failure to provide adequate officer training regarding the use of force,[10] (2) the lack of official policies and inadequacy of training regarding officer interaction and communication with non-English speakers, and (3) Chief Wilhoit's "ratification" of Officer Johnson's allegedly unlawful conduct. The court will examine each of these in turn to determine whether Mr. Pacheco has put forth sufficient evidence to proceed.

## I. Policies and Training Regarding the Use of Force

Mr. Pacheco contends that the City Defendants are liable for his injury because they failed to adequately train SPD officers in the appropriate use of force – both lethal and non-lethal – during an investigative detention. (Docket No. 81, p. 9; Docket No. 83-2 ¶ 3.) To establish municipal liability for a failure to train, a plaintiff must show "(1) the training program is inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Bonner-Turner v. City of Ecorse*, No. 14-2337, 2015 WL 5332465, at *13 (6th Cir. Sept. 14, 2015) (quoting *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty.*

---

[10] In the Complaint, Mr. Pacheco alleged two additional bases for municipal liability regarding Officer Johnson's use of force: that the City Defendants' official policies regarding the use of force were unconstitutional and that the City Defendants were aware of the existence of a custom or tolerance of, or acquiescence in, officers' unconstitutional use of excessive force. (Docket No. 1 ¶¶ 41, 43, 50–52, 54.) Mr. Pacheco appears to have abandoned these theories in his Response, and neither of these theories is supported by the affidavit or expert report submitted by Dr. Lyman. The court also notes that, consistent with the reasoning to follow, Mr. Pacheco has not produced evidence demonstrating that any of the City Defendants was deliberately indifferent to any unconstitutional official policy or unofficial custom of tolerance.

*Cmmr's of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).  To demonstrate deliberate indifference, the plaintiff must "show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."  *Plinton*, 540 F.3d at 464 (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).  Alternatively, a single violation, "accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."  *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 409).

Mr. Pacheco fails to present any admissible evidence raising a genuine issue of fact as to whether SPD training was inadequate to train officers in the constitutional use of force or whether that alleged inadequacy was the result of deliberate indifference.  As far as the court can discern from the record, Mr. Pacheco submits as evidence of this inadequate training only one statement in Dr. Lyman's affidavit that the City Defendants "failed to provide proper training to Officer Johnson . . . regarding the appropriate use of deadly force."  (Docket No. 83-2 ¶ 3.) Dr. Lyman's report, on the other hand, contains no description of SPD training (or even policies) regarding the use of force and outlines no reasoning that leads to a conclusion that the training is inadequate.  Because "[a]n expert opinion submitted in the context of a summary judgment motion must be more than a conclusory assertion about ultimate legal issues," but, rather, should set forth facts and outline a line of reasoning "arising from a logical foundation," *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 663–64 (6th Cir. 2005) (internal quotation marks omitted), the court finds that Dr. Lyman's opinion regarding the adequacy of SPD training on the use of force is inadmissible.  Mr. Pacheco has, therefore, failed to place into the record *any* admissible evidence regarding the City Defendants' alleged failure to properly train SPD officers

in the use of force.

Additionally, Mr. Pacheco has failed to demonstrate that any inadequacy in the training of SPD officers regarding the use of force (during investigative detentions or otherwise) was the result of the City Defendants' deliberate indifference. First, Mr. Pacheco has failed to show "prior instances of unconstitutional conduct" that demonstrate that any of the City Defendants "ignored a history of abuse" or were "clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton*, 540 F.3d at 464. During Chief Wilhoit's twenty-one year tenure as head of the SPD, there were only – other than the present case – two uses of deadly force and two complaints of excessive force by SPD officers. These incidents, which are isolated in time and number, are not sufficient to demonstrate a pattern of abuse or to place the City on notice that its officers were being inadequately trained in the use of force, nor does it suggest that the City Defendants made a conscious decision to disregard a known danger to the people with whom SPD officers come into contact. *See Estate of Hickman v. Moore*, 502 F. App'x 459, 469 (6th Cir. 2012) ("A handful of isolated excessive force complaints occurring several years before the relevant conduct do not establish a 'pattern or practice' of condoning such activity.") Furthermore, Mr. Pacheco does not dispute that only *one* of the complaints of excessive force resulted in a finding (after an investigation) that the use of force was unjustified. One instance of unjustified excessive force in twenty-one years cannot satisfy the stringent requirements of deliberate indifference, which requires the plaintiff to prove that the defendants disregarded a known or obvious risk.

Nor has Mr. Pacheco submitted any evidence or advanced any argument that, in addition to his own treatment at the hands of Officer Johnson, the City Defendants "failed to train [their] employees to handle recurring situations presenting an obvious potential for such a violation."

*Plinton*, 540 F.3d at 464.  Accordingly, the court concludes Mr. Pacheco has failed to raise a genuine dispute of fact as to the City Defendants' liability for his injury on the basis of their alleged failure to adequately train SPD officers in the appropriate use of force.

## II.     Policies and Training Regarding Officer Interactions with Non-English Speakers

Mr. Pacheco next contends that the City Defendants are liable for the deprivation of his constitutional rights because they (1) failed to promulgate written directives "that identify operational steps for officers to follow" during interactions with persons who do not speak English (Docket No. 91-1, p. 18) and (2) provided inadequate training to SPD officers "in the use of the Spanish language and Hispanic cultural norms."[11]  (Docket No. 83-2 ¶ 4; *accord* Docket No. 81, pp. 7–8, 10–11, 14.)  Through his expert, Dr. Lyman, Mr. Pacheco argues that, had the City Defendants promulgated written policies regarding communication with non-English speakers and properly trained Officer Johnson in the same, "it is likely that [Officer] Johnson's encounter with [Mr.] Pacheco would have been such that [Mr.] Pacheco would not have been shot."  (Docket No. 81, p. 8 (quoting Docket No. 91-1, p. 18).)

Both asserted bases for municipal liability – failure to promulgate official policies and failure to adequately train – require Mr. Pacheco to prove that the City Defendants were deliberately indifferent to deficiencies in SPD policies and training regarding officers' interactions with non-English speakers.  *See Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).  Mr. Pacheco

---

[11] Mr. Pacheco also argues that there is a "custom of failing to provide adequate Spanish language training and culture awareness protocol" that provides an additional basis for municipal liability.  (Docket No. 81, p. 14.)  The court can discern no difference, however, between a claim that a municipality has failed to adequately train its officers and a claim that the municipality tolerates a custom of failing to adequately train its officers.  Both claims require proof of deliberate indifference, which, as discussed below, Mr. Pacheco has failed to provide.

must demonstrate deliberate indifference by showing that "the municipality possessed actual knowledge indicating a deficiency with the existing policy or training (or lack thereof), such as where there have been recurring constitutional violations," or that the need to correct those deficiencies was "plainly obvious," such as when "a violation of federal rights may be a *highly predictable* consequence of [the municipality's failure to act]." *Heyerman*, 680 F.3d at 648–49 (internal quotation marks omitted). Mr. Pacheco has placed into the record no evidence of a single incident in which an SPD officer was not able to adequately interact with a Spanish speaker, let alone a recurring pattern of constitutional violations related to these interactions. Mr. Pacheco, therefore, must demonstrate that the need to correct deficiencies in SPD policies and training was so obvious that a constitutional violation was a highly predictable consequence of the City Defendants' failure to do so.

Mr. Pacheco argues that, because roughly 20% of the persons encountered by Officer Johnson on his patrols were Hispanic, the City Defendants were on notice of the potential for recurring misunderstandings between officers and the non-English speakers with whom they came into contact. Additionally, Dr. Lyman opines that the need to provide policies and training regarding interactions with non-English speakers was "obvious" because the City had "experienced a significant Hispanic population growth in recent years," and "[i]t was therefore likely and predictable that its police officers would at some point have confrontations with Hispanics." (Docket No. 83-2 ¶ 5.) According to Dr. Lyman, the need for written policies and additional training was so obvious that the City Defendants' failure to implement them "was an act of deliberate indifference." (*Id.*)

This evidence does not – as a matter of law – support an inference of deliberate indifference. First, an expert such as Dr. Lyman cannot give as an opinion that "the

[municipality] was deliberately indifferent." *Cutlip v. City of Toledo*, 488 F. App'x 107, 120–21 (6th Cir. 2012). This statement merely "identifie[s] the precise legal standard relevant to this case" and then claims that, in Dr. Lyman's opinion, the relevant actors "displayed this mental state," which is not admissible expert testimony. *Id.* Second, Mr. Pacheco has failed to demonstrate that the alleged deficiencies in SPD policies and training were "plainly obvious," such that an SPD officer's violation of a citizen's federal rights was a highly predictable consequence. Mr. Pacheco and Dr. Lyman both note that SPD officers came into contact with a high percentage of "Hispanics" and that the area had experienced a significant "Hispanic population growth in recent years." The fact that people of Hispanic descent live in an area may support Dr. Lyman's conclusion that it was "likely and predictable" that SPD officers would "at some point have confrontations with Hispanics," but that statement does not, on its own, support the additional conclusion that SPD policies and training relating to officer interactions with non-English speakers were obviously deficient. Even if the court were to accept Dr. Lyman's conclusory assertion that "confrontations" between SPD officers and people of Hispanic descent were "likely and predictable," that assertion does not necessarily lead to a conclusion that officers' use of unconstitutional excessive force against those people is a "*highly* predictable consequence," nor has Mr. Pacheco offered any evidence to support that logical leap. Additionally, just because a person is "Hispanic," as described by Mr. Pacheco and Dr. Lyman, it does not necessarily mean that he has difficulty speaking or understanding English, and there is no evidence in the record that indicates what percentage of the "Hispanics" encountered by SPD officers had or would have difficulty communicating with the officers, if any. Nor does Mr. Pacheco offer any evidence in the record to explain what type of policies he is asserting should have been in place or how they would be causally linked to preventing the excessive use of force

against Hispanics who are encountered by SPD officers.

Additionally, Mr. Pacheco's contention that SPD training was obviously inadequate is belied by his own experience. It is undisputed that, like all SPD officers, Officer Johnson did receive training in the use of the Spanish language, which consisted of a 20-hour class, and, further, Mr. Pacheco has acknowledged that Officer Johnson was able to give him commands in Spanish that Mr. Pacheco understood. Mr. Pacheco and Dr. Lyman clearly question the adequacy of the SPD's Spanish language training, but neither outlines any articulate theory of how the training was inadequate to the point that constitutional violations were an obvious consequence. Moreover, even if Mr. Pacheco could demonstrate that his injury may have been avoided if Officer Johnson had received more thorough training in Spanish language and Hispanic culture – which he has not – this would still be insufficient to establish a claim that the City was deliberately indifferent to deficiencies in the training that was provided. *See City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989) (noting that proof that an injury could have been avoided if the officer had "better or more training" does not establish municipal liability, because "[s]uch a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal"); *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) ("[T]he fact that alternative procedures might have addressed [Mr. Pacheco's] particular needs does not show that the [City Defendants were] deliberately indifferent.").

Accordingly, the court concludes Mr. Pacheco has failed to raise a genuine dispute of fact as to the City Defendants' liability for his injury on the basis of their alleged failure to promulgate official policies regarding officer interactions with non-English speakers or their

alleged failure to adequately train SPD officers in the Spanish language and Hispanic culture.

## III.     Ratification of Officer Johnson's Conduct

Mr. Pacheco contends that the City Defendants, and particularly Chief Wilhoit, "ratified" Officer Johnson's allegedly unconstitutional conduct when they failed to properly investigate or discipline Officer Johnson after the shooting.  (Docket No. 81, p. 12.)  Like his claims of failure to promulgate policies or failure to properly train, Mr. Pacheco must show that the City Defendants' failure to investigate or discipline Officer Johnson amounts to "deliberate indifference," *Jackson v. Wilkins*, 517 F. App'x 311, 321–22 (6th Cir. 2013), which he has failed to do.  Undisputed evidence demonstrates that the SPD had investigative and disciplinary procedures in place for incidents of officer-shooting: TBI, an outside agency, was to be contacted and tasked with investigating the use of force and, if the use of force was found to be unjustified, the officer would be disciplined, likely by being terminated.  The undisputed evidence also demonstrates that, in the past, officers *had* been terminated for the use of excessive force after an investigation into a complaint.  Chief Wilhoit followed these procedures after the shooting on March 13, 2010, and Mr. Pacheco has not disputed that both the TBI *and* Chief Wilhoit conducted investigations into the incident and concluded that Officer Johnson's use of force was justified.  Other than disagreeing with the conclusion of these investigations, Mr. Pacheco has offered no evidence demonstrating that these investigations were deficient, and Dr. Lyman's opinion that the SPD ratified misconduct by "failing to hold [Officer Johnson] accountable" after the incident is merely an inadmissible conclusory statement that is not supported in Dr. Lyman's report by any facts or articulated reasoning.  (Docket No. 91-1, p. 19.)

Mr. Pacheco relies on the Sixth Circuit's opinions in *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), and *Marchese v. Lucase*, 758 F.2d 181 (6th Cir. 1985), to support

his argument that, because Chief Wilhoit did not discipline Officer Johnson, Chief Wilhoit (and thereby the City of Springfield) ratified his actions and is, therefore, liable under § 1983. (Docket No. 81, p. 12.)  The Sixth Circuit recently revisited this line of cases and clarified that the municipal liability in that case was not based solely on a single decision not to discipline an officer but, rather, on the finding of a custom of deliberate indifference to constitutional violations that was evidenced by other facts in addition to the isolated failure to discipline.  *See Nouri*, 615 F. App'x at 296 ("[W]e have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff.").  Mr. Pacheco has not produced any evidence other than his own alleged mistreatment that even hints at a custom of deliberate indifference within the SPD, and his case, therefore, is distinguishable from *Leach* and *Marchese*.

Accordingly, the court concludes that Mr. Pacheco has failed to raise a genuine dispute of fact as to the City Defendants' liability for his injury on the basis of their alleged ratification of Officer Johnson's conduct on March 13, 2010.  For this reason, and the reasons discussed above, the court will also grant summary judgment to the City Defendants on Mr. Pacheco's § 1983 claim against the City.

## CONCLUSION

For the reasons discussed herein, the City Defendants' Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge