| | | |
|---|---|---|
| **JOSE OSMIN CALDERON PACHECO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:11-cv-00221** |
| | ) | **Judge Aleta A. Trauger** |
| **WILL JOHNSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM & ORDER

Pending before the court is a Motion for Partial Summary Judgment (Docket No. 271) filed by the defendant, Will Johnson, to which the plaintiff, Jose Osmin Calderon Pacheco, has filed a Response in opposition (Docket No. 290), and the defendant has filed a Reply (Docket No. 299). The defendant has also filed a Motion to Exclude the Affidavit of Dr. John Ward. (Docket No. 301.) For the reasons discussed herein, the Motion for Partial Summary Judgment and the Motion to Exclude the Affidavit of Dr. John Ward will both be granted.

## BACKGROUND & PROCEDURAL HISTORY[1]

This civil rights action arises from an altercation between the plaintiff and the defendant that took place in March of 2010 and resulted in severe injuries to the plaintiff. The plaintiff seeks, among other damages, lost future earnings based on the allegations that his injuries have left him paralyzed and unable to work. It is undisputed that, at the time of the incident giving rise to this action, the plaintiff, who immigrated to the United States from El Salvador in 2000, was not legally authorized to work in the United States. Due to criminal convictions, the United

---

[1] Because there have been several previous opinions issued by the court in this action, familiarity with which is presumed, the court will not rehash the entire background and procedural history of the dispute, but will recount only that information which is pertinent to the instant decision.

States Citizenship and Immigration Services had revoked the plaintiff's Temporary Protected Status ("TPS") and authorization to work in the United States between October and November of 2008. Further, there is no evidence in the record to support a finding that the plaintiff's status might ever change with respect to his authorization to legally work in the United States.

On February 21, 2017, the court issued a Memorandum and Order addressing several motions *in limine* filed by the defendant, including a request to exclude all evidence related to the plaintiff's lost future earnings on the ground that the plaintiff is not authorized to work in the United States, pursuant to the Immigration Reform and Control Act ("IRCA"). (Docket No. 262.) The Order reopened discovery into the issue of the plaintiff's current immigration status and capacity to work in the United States. By this Order, the court also allowed the plaintiff to supplement the record regarding his estimated lost future wages to include 1) information about his immigration status and 2) an estimate of lost future earnings if he were working in El Salvador rather than the United States. Finally, the court ordered that any objections by the defense to the sufficiency of the plaintiff's claim for lost future earnings should be addressed by motion for summary judgment.

On June 5, 2017, the defendant filed the instant Motion for Partial Summary Judgement on the plaintiff's claim for lost future earnings (Docket No. 270), along with a Memorandum in support (Docket No. 271), a Statement of Undisputed Material Facts (Docket No. 272), and a number of exhibits (Docket Nos. 275-278). By this motion, the defendant renews his argument that the plaintiff cannot make a claim for lost future earnings based on employment in the United States, due to his immigration status. The defendant also argues that the plaintiff has failed to make a claim for lost future earnings based on his lost capacity to work in El Salvador because he has not met his burden of providing an estimate for what those wages would be. In particular,

the defendant challenges the admissibility of the opinions of plaintiff's expert, Robert Vance of Forensic & Valuation Services, PLC, with respect to the plaintiff's future lost earning capacity in El Salvador.[2]

Indeed, the only evidence in the record to support the plaintiff's claim for lost future wages based on his earning capacity in El Salvador is found in a revised version of Mr. Vance's expert report, dated April 3, 2017.[3]  In this report, Mr. Vance explains that he has calculated the plaintiff's future lost earning capacity in the United States based on the plaintiff's last known official wages from 2006 and earlier, when the plaintiff worked legally in the United States as a welder.  (Docket No. 275-5.)  Mr. Vance then used a methodology called "purchasing power parity conversion" (or PPP) to convert these future lost earnings into a dollar amount that would afford the same amount of goods and services in El Salvador, in the event that the plaintiff were to be deported.  According to Mr. Vance, in the event that the court finds that the plaintiff is likely to remain in the United States, the plaintiff is entitled to recover lost future earnings in the amount estimated prior to the PPP conversion.  Mr. Vance then states that the plaintiff should recover lost future earnings in the post-PPP-conversion amount, in the event that the plaintiff is

---

[2] The defendant concedes that the admissibility of Mr. Vance's opinion is an issue that could be challenged pursuant to a motion to exclude under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993).  The defendant correctly argues, however, that, because the Vance report is central to the plaintiff's claim for lost future earnings, this matter must be resolved prior to considering the Motion for Partial Summary Judgment on this claim.

[3] As the defendant notes in his Reply, it is undisputed that the plaintiff has testified during a deposition that, prior to immigrating to the United States in 2000, he had earned wages of 1500 *colones* every two weeks in El Salvador, doing work of an unspecified type.  (See Docket No. 292 ¶77.)  The plaintiff has not, however, pointed to this fact in his briefing and has proffered no calculation of future lost earning capacity in El Salvador based on this testimony, nor has he defended against the pending motion on the ground that his lost future wages should be thus calculated.  Moreover, there is no evidence in the record to suggest that this testimony accurately reflects the wages that would be available to the plaintiff now and in the future, had he not been rendered unable to work due to his injuries.

likely to be deported to El Salvador. Mr. Vance explains that his calculations will allow the damages awarded to afford the plaintiff the same quality of life in either location.

Mr. Vance, however, has made no effort to ascertain the wages that would have been available to the plaintiff as a worker in El Salvador.[4] To support his use of the PPP conversion, Mr. Vance cites to the following article: "Illegal Aliens: Damage Claims for Lost Wages," Journal of Forensic Economics 17(3), 2004, pp. 281-288, Tyler J. Bowles, Department of Economics, Utah State University, Logan, UT (the "Bowles Article"). The Bowles Article, however, itself notes that there are two questions that need to be answered when calculating lost future wages based in an undocumented plaintiffs' lost capacity to work in a foreign country: first, what the plaintiff's earning capacity would be in the foreign country and, second, how to convert that amount into United States dollars to reach the correct damages amount. The article then explicitly states that it only addresses the second question, because the issues of where to find data necessary to answer the first question, and how to understand it, are too daunting. The article then goes on to explain PPP conversion as a means of conducting this second part of a damages calculation.

On June 22, 2017, the plaintiff filed a Response to the defendant's Motion for Partial Summary Judgment (Docket No. 290), along with a Memorandum in support (Docket No. 291), a Response to the defendant's Statement of Undisputed Material Facts (Docket No. 292), and a number of additional exhibits (Docket No. 293). Attached to the plaintiff's Memorandum is the Affidavit of Claudia Maria Valenzuela Diaz, Consul General of El Salvador in the state of

---

[4] Mr. Vance has also made no effort to ascertain the plaintiff's future lost earning capacity in the United States based on the type of work the plaintiff was engaged in between the end of 2006, when he lost his Temporary Protected Status, and the time of the incident giving rise to this litigation, which the plaintiff has testified to be sporadic, unskilled labor that did not require documentation of legal authorization to work in the United States. (Docket NO. 275-7 (excerpt from July 14-15, 2014 Pacheco Deposition).)

Georgia, which states that El Salvador does not maintain statistics as to the specific earnings rates for skilled workers. (Docket No. 291-1.) Also attached to the plaintiff's Response is the Affidavit of John O. Ward, Ph.D., explaining that a PPP conversion is the proper methodology to be used to determine a damages award for a foreign national and stating that Mr. Vance applied the PPP conversion correctly to his calculation of the plaintiff's damages, based on earnings in the United States. (Docket No. 291-2.) Dr. Ward does not address the question of whether Mr. Vance's report calculates the plaintiff's lost earning capacity based on his lost ability to work in El Salvador.

On June 27, 2017, the defendant filed a Reply (Docket No. 299), along with exhibits (Docket No. 300). Also on June 27, 2017, the defendant filed a Motion to Exclude the Affidavit of Dr. John Ward, arguing that it is a late-filed expert report that is not admissible under Rule 56(c)(4). (Docket No. 301.)

## LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment, if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

In 2002, the Supreme Court ruled that an undocumented plaintiff could not recover back pay from the National Labor Relations Board because he had not been authorized to legally work in the United States and, therefore, his employment would have been in violation of the IRCA. *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 148-49 (2002) ("Under the IRCA regime it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies."). The question at the heart of the instant dispute is whether *Hoffman* should be interpreted to generally preclude the recovery of lost wages based on earning capacity in the United States by a plaintiff who is not legally authorized to work in this country. While it appears that the Sixth Circuit has not issued an opinion addressing this matter, the court is persuaded by the Supreme Court decision in *Hoffman* that allowing the plaintiff to recover for lost future wages that could have been earned in the United States would violate public policy

and run counter to established law. [5]  Moreover, the plaintiff has provided no binding authority to the contrary.

While the court would be inclined to follow the Second Circuit decision in *Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219 (2d Cir. 2006), cited by the plaintiff, the holding in *Madeira* does not change the outcome in this action.  *Madeira* expressly states that recovery of lost wages by an undocumented plaintiff should not be precluded in the *limited* instance where the defendant is the plaintiffs' employer and knowingly violated the IRCA in hiring the plaintiff.  469 F.3d at 228. [6]  This is tantamount to an unclean hands theory, by which an employer defendant waives its right to raise the issue of the plaintiff's unemployability in the United States in order to avoid recovery of lost future wages.  This holding is not applicable to the instant action, where the defendant was never the plaintiff's employer.  The plaintiff argues that, under *Madeira*, he is entitled to recover his lost wages based on his earning capacity in the Unites States, because he is basing his claim for such wages on wages he earned before his TPS status was revoked.  This is a meritless argument, because the plaintiff's TPS status was revoked *before* he was injured, and what he earned before that is irrelevant.

Accordingly, the court finds that the plaintiff may not recover from the defendant lost future earnings based on wages he would have earned in the United States, due to his lack of authorization to legally work in the United States at the time of the incident giving rise to this

---

[5] The plaintiff argues that Hoffman only applies to National Labor Relation Act claims, citing *Walmart Stores, Inc. v. Cordova*, 856 S.W.2d 768 (Tex. Ct. App. 1993).  *Walmart*, however, is a non-binding district court opinion that actually predates *Hoffman*.  Nevertheless, the court is not persuaded that *Hoffman* should be read so narrowly.

[6] While *Hoffman* also involved an employer defendant, the *Hoffman* opinion expressly noted that there were other means to sanction the employer in that instance for its violation of the NLRA, aside from a judgment of lost wages.

action or any time thereafter. [7]  The court is persuaded, however, by the holding in a non-binding

district court opinion cited by the defendant, in which lost wages in this type of situation were

not denied entirely, but were limited to the wages the plaintiff could earn in his country of legal

residence.  *Wielgus v. Ryobi Techs., Inc.*, 875 F.Supp.2d 854, 862 (N.D. Ill. 2012) ("Awarding

future earnings at a United States pay rate necessarily assumes an undocumented alien's future

employment in the Unites States, which is impermissible under federal immigration law.  But

where a defendant's tortious conduct results in the diminishment of an unauthorized alien's

future earning capacity, he should not be precluded from recovering the lost future earnings he

could earn lawfully in his country of residence.").  This paradigm allows the court to both uphold

the federal policy against the employment of unauthorized immigrant workers that is embodied

in IRCA, while also honoring the established common law of tort recovery.  As such, the court

finds that the plaintiff should be entitled to recover lost future earnings based only on his lost

capacity to work in El Salvador. [8]

Next, the court considers whether the plaintiff may, in fact, proceed with his claim for

lost future wages based on earning capacity in El Salvador, given the evidence in the record.

---

[7] The plaintiff argues that he is unlikely to be deported due to his being disabled, the fact that he
has been in the United States for so long, and the fact that he has children here.  First, he cites to
no authority or factual evidence to support this proposition.  More importantly, however, this
argument is wholly irrelevant.  The plaintiff confuses the inquiry before the court, which is not
about the likelihood of the plaintiff being deported but the question of whether he had the
capacity to be legally employed in the United States at the time of the incident or at any time in
the future, which the record shows he did not.

[8]  Additionally, the court notes that, even if it were to allow the plaintiff to recover future lost
wages based on what he was earning in the United States at the time of his injury, the plaintiff
has made no claim for such lost earnings.  His claim for wages based on his earning capacity in
the United States is limited to Mr. Vance's calculation extrapolating from the wages the plaintiff
was earning more than four years prior to his injury, while he was legally employed as a welder.
It does not opine on future lost wages based on the unskilled and unsteady employment the
plaintiff had procured at the time of his injury, after his TPS status was revoked.

The only evidence the plaintiff points to in support of such a claim is the revised expert report of Mr. Vance.[9]  Without conducting a complete *Daubert* analysis of Mr. Vance's expert report, the court finds that Mr. Vance has simply not proffered any evidence about the plaintiff's lost earnings in El Salvador, nor is there any other evidence in the record to show the plaintiff's loss in this regard.  The calculation that Mr. Vance has done is simply not responsive to the court's Order that the plaintiff supplement the record with evidence of his future lost wages based on his earning capacity in El Salvador.  What Mr. Vance did attempt to calculate – the amount of damages the plaintiff would be entitled to recover, assuming he were able to recover lost wages based on his earning capacity as a welder in the United States, converted to an amount with the same purchasing power in El Salvador – is not admissible simply because it is irrelevant to the dispute.  Not only, as discussed above, is the plaintiff not entitled to such wages based on his earning capacity in the United States, but neither the defense nor the court has suggested that *any* damages in this case should be converted into their purchasing power in El Salvador based on the possibility of deportation. [10]

The plaintiff and Mr. Vance appear to have blatantly misunderstood the court's directives with respect to procuring evidence of the plaintiff's future lost earning capacity, in the event that he were working in El Salvador rather than in the United States.  The issue is not whether the plaintiff will ultimately be deported.  Rather, the question is what would have been the plaintiff's capacity to earn future wages in El Salvador, were he not stripped of such capacity at the time of

---

[9] As noted above, the plaintiff's testimony that he once, many years ago, earned 1500 *colones* every two weeks in El Salvador has not been expanded into a comprehensive claim for lost wages based on the plaintiff's current and future earning capacity in El Salvador.

[10] While the instant opinion addresses the pending Motion for Partial Summary Judgment, rather than any discrete motion to exclude Mr. Vance's opinions, the court finds that Mr. Vance's opinions with respect to future lost earnings – both his direct calculation of future lost earnings based on the plaintiff's working as a welder in the United States and the PPP conversion of the same – are in fact inadmissible because they are irrelevant, for the reasons discussed herein.

the injury giving rise to this litigation. It further appears that Mr. Vance misinterpreted and misapplied the very methodology he claims to have relied on from the Bowles Article. Only once damages based on earning capacity in another country are established in a foreign currency does the Bowles Article suggest that a PPP conversion should be done to establish the equivalent amount of damages recoverable in U.S. dollars. Mr. Vance inverted this methodology to come up with an amount of damages based on his calculation of the plaintiff's earning capacity working legally as a welder in the United States. Mr. Vance made absolutely no attempt to establish the plaintiff's lost earning capacity in El Salvador. The fact that the government of El Salvador does not maintain information about wages neither forecloses the ability of the plaintiff to gather evidence establishing typical wages in El Salvador from other sources, nor shields the plaintiff from the obligation to do so in order to maintain his claim. Accordingly, the court finds that the plaintiff has failed to put forth a sufficient claim of lost earning capacity in El Salvador.

Finally, even if the court were to consider the Affidavit of Dr. Ward, it offers nothing that would bolster the admissibility of Mr. Vance's opinion about future lost wages or that would save the plaintiff's claim for such future lost wages. The court has already found that Mr. Vance does not offer a relevant opinion on the plaintiff's lost earning capacity in El Salvador, and the Ward Affidavit does not say anything to the contrary. Accordingly, the court finds that the Ward Affidavit, which has been proffered for the sole purpose of reinforcing the inadmissible opinions of Dr. Vance, is itself inadmissible because it is irrelevant. Accordingly, the Motion to Exclude the Ward Affidavit will be granted.

Because the plaintiff is not entitled to recover lost future wages based in his earning capacity in the United States, and because he has not made a sufficient claim for lost future

wages based on his earning capacity in El Salvador, his claim for lost future wages may not proceed.

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Partial Summary Judgment and Motion to Exclude to Affidavit of Dr. John Ward are hereby **GRANTED**.

It is so **ORDERED**.

Enter this 6th day of July, 2017.

_____
ALETA A. TRAUGER
United States District Judge