# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOSE OSMIN CALDERON PACHECO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-00221 |
| ) | Judge Aleta A. Trauger |
| WILL JOHNSON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Pending before the court is Motion *in Limine* #1, filed by defendant Officer Will Johnson, regarding the introduction of expert testimony by Dr. Michael Lyman (Docket No. 306), to which the plaintiff, Jose Osmin Calderon Pacheco, has filed a Response in opposition (Docket No. 344). For the reasons discussed herein, the motion will be granted in part and denied in part.

## BACKGROUND & PROCEDURAL HISTORY

This action centers around allegations that the defendant, while on duty as a police officer in Springfield, TN, unreasonably used excessive force against the plaintiff, violating the plaintiff's constitutional rights and resulting in severe personal injury. The plaintiff has proffered the expert report of Dr. Michael Lyman, whose qualifications include over 40 years of working as a law enforcement agent, criminal investigator, police trainer, and college professor in the field of policing. (Docket No. 333-8.) He has researched, taught, and published in the area of police procedures and has worked as a police instructor, training officers and officer candidates on police techniques and procedures. The opinions presented in Dr. Lyman's report include the following:

1

1) Based on the plaintiff's version of events, the defendant's use of force was unreasonable, excessive, and unnecessary, because the plaintiff had his hands in the air and was not holding a weapon at the time he was shot;

2) The defendant's detention of the plaintiff was unreasonable because:

   a) video evidence from the scene shows that the plaintiff was seated in his vehicle, parked at the curb in front of the plaintiff's home and, therefore, there was no reason for the defendant to have approached the plaintiff, and

   b) the defendant testified that his suspicion was raised by the fact that the plaintiff stepped out of his vehicle when the patrol car pulled up behind him although, according to Dr. Lyman, that is reasonable and a sign of courtesy to the defendant, given the plaintiff's identity as a Hispanic man; and

3) The City of Springfield ratified the misconduct of the defendant.

Dr. Lyman's expert report also contains a general discussion of guidelines regarding use-of-force procedures by police officers.

On July 7, 2017, the defendant filed the pending motion, seeking to exclude the introduction of *any* testimony from Dr. Lyman on the grounds that 1) Dr. Lyman is not qualified to offer his opinions under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993), and 2) Dr. Lyman's opinions are impermissible legal conclusions. (Docket No. 306.)

On July 21, 2017, the plaintiff filed a Response in opposition, conceding that Dr. Lyman may not offer opinions as to the ultimate issues in this case (whether the defendant acted reasonably), but arguing that Dr. Lyman is qualified to opine on standards of police use of force and that he may opine as to whether certain versions of events comport with or depart from the appropriate standard.

## LEGAL STANDARD

Expert testimony in federal court is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In its "gate-keeping" role, a trial court must evaluate the relevance and reliability of all expert testimony, whether the testimony offered is "scientific" or not. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999) (citing *Daubert*, 509 U.S. at 589-90). An expert cannot assert an opinion that resolves a question of law or an ultimate question of fact that is within the province of the jury, such as whether a defendant police officer used unreasonable force. *See De Merrell v. City of Cheboygan*, 206 F. App'x 418, 427-27 (6th Cir. 2006).

## ANALYSIS

The defendant first argues that Dr. Lyman is not qualified to testify at all on the matters in his report, because he is not currently a law enforcement officer, has no experience as a patrol officer, and has only limited personal experience with use of force (having never discharged his weapon while on duty in law enforcement, having never used pepper spray, and having never used his baton in a striking manner). The court is not persuaded that Dr. Lyman's limited personal experience in the field is a barrier to his being qualified to testify on the standards of use of force by police officers. In fact, his role as expert is not to opine on actual use-of-force scenarios. Rather, his role is to contextualize the evidence the jury will hear about the use of force by the defendant against the plaintiff, in light of the standards practiced by officers

3

throughout the country. Dr. Lyman's background indicates that he is sufficiently qualified to offer such testimony, given his extensive experience researching, writing, and lecturing on this topic, as well as his real world experience training police officers.

Accordingly, Dr. Lyman may testify about national standards, and he may offer opinions as to how these standards should manifest in hypothetical situations, including hypothetical situations that mirror the varying versions of the events giving rise to this action. He may not, however, opine as to the correct version of events in this matter or opine as to any ultimate conclusions regarding whether the defendant acted reasonably at any point in time during his encounter with the plaintiff.

With regard to Dr. Lyman's opinion that the defendant's use of force was excessive, unreasonable, and unnecessary, first, it is based on a presumption of facts that has not yet been established. The question of whether the plaintiff was holding a weapon and had his hands in the air is highly disputed, as acknowledged in Dr. Lyman's own report, which recounts the defendant's version of events as indicating that, at the time he shot the plaintiff, the plaintiff was about to hit the defendant with the defendant's baton. The factual finding of how these events actually took place is a question for the jury to decide, based on its determination of which account is more credible. Second, even if the jury finds that the plaintiff's version of events is correct, the question of whether the defendant's actions were reasonable remains an ultimate fact in this case for the jury to decide. Dr. Lyman may not opine on this matter. Dr. Lyman may, however, proffer evidence about national standards of police conduct and what police officers are generally trained and expected to do in similar situations.[1]

---

[1] While the defendant properly points out that Dr. Lyman is not specifically an expert on policing procedures in Springfield, Tennessee, it is clear that Dr. Lyman's expert report does not purport

4

With respect to Dr. Lyman's opinions about whether the defendant was reasonable in his detention of the plaintiff, Dr. Lyman's opinions about how the encounter between the plaintiff and the defendant began are irrelevant. Even if the defendant was unreasonable in pulling his patrol car behind the plaintiff's, there are no allegations that he violated the plaintiff's constitutional rights in doing so. At that point in time, the plaintiff was not placed under arrest. The claims in this action arise from what took place between the plaintiff and the defendant after the defendant pulled his patrol car behind the plaintiff and the plaintiff exited his vehicle and approached the defendant (a fact that is undisputed in the record). Further, Dr. Lyman may not opine as to the reasonableness of the plaintiff's actions in exiting his vehicle and approaching the defendant, given his background as a Hispanic man, because Dr. Lyman is not an expert in Hispanic culture. Nor are Hispanic cultural norms relevant to the question of the reasonableness of a police officer's response to behavior by citizens when on patrol.[2] Even if the plaintiff did believe, due to his cultural background, that exiting his vehicle and approaching the defendant was a sign of courtesy, that does not have any relevance to the question of whether the defendant was reasonable in finding that behavior suspicious or threatening.[3] And, again, the fact that the

---

to speak to issues unique to Springfield, but rather to national standards that address the constitutional rights at issue in this case.

[2] The plaintiff argues that this opinion is relevant and admissible because police officers should be attuned to cultural differences among citizens of various ethnic backgrounds and treat them accordingly. The argument, however, that Springfield police officers should be specifically trained and tasked with accommodating Hispanic cultural norms is one that has already been rejected by the court in its dismissal of the claims against the City of Springfield, and the court will not allow this argument to be resurrected through Dr. Lyman's testimony.

[3] Moreover, the defendant's version of events includes other factors that led to his decision to detain the plaintiff aside from his having exited his vehicle, such as his unwillingness or inability to answer basic questions about where he lived and what he was doing, his repeated placement of his hands in his pockets after being asked not to do so, and the appearance of a metallic object that he had placed in his pocket.

5

defendant then made the decision to detain the plaintiff is not relevant to the question of whether the defendant was reasonable in his use of force, once he had begun to detain the plaintiff and the plaintiff began to resist, and it is that use of force that is the conduct giving rise to this action.

Dr. Lyman may, however, opine on the general standards of use of force as outlined in his expert report. These opinions could assist the jury in its determination, after it has made findings of fact about how the events unfolded, as to whether the defendant's use of force was warranted.[4]

Finally, Dr. Lyman may not opine about the reasonableness of the actions taken by the City of Springfield, because the claims against the City have been dismissed, and it is no longer a party to this action.

## **CONCLUSION**

For the foregoing reasons, the Motion *in Limine* regarding the expert testimony of Dr. Michael Lyman is hereby **GRANTED IN PART AND DENIED IN PART**. Dr. Lyman shall

---

[4] This decision is consistent with decisions from other courts cited by the defendant in which Dr. Lyman's expert testimony has been proffered in similar actions. *See Gough v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:12-cv-849-DJH-CJL, 2016 WL 4535663 (W.D. Ky. Aug. 30, 2016) (holding that Dr. Lyman had sufficient qualifications and was permitted to testify as to use-of-force policies and procedures and whether a defendant officer's actions were consistent with those procedures, though he could not testify as to the ultimate question of whether the officer's actions were reasonable); *Alvarado v. Oakland Cnty.*, 809 F. Supp. 2d 680 (E.D. Mich. 2011) (same); *State of Kansas v. Briscoe*, No. 101,753, 2010 WL 3731182 (Kan. Ct. App. Sept. 17, 2010) (affirming the exclusion in a criminal trial of Dr. Lyman's opinions that certain investigative procedures were not done or were not done properly); *Morris v. Kee*, No. 06-2244M1V, 2008 WL 2073492 (W.D. Tenn. Feb. 26, 2008) (excluding Dr. Lyman's opinions that a defendant officer's actions were unjustified, though Dr. Lyman's qualifications to testify generally regarding police practices and procedures were unchallenged); *Aiels v. City of Cedar Rapids*, No. C01-0076, 2003 WL 25686841 (N.D. Iowa Dec. 30, 2003) (excluding Dr. Lyman's opinions regarding which version of events was more credible).

be permitted to testify at trial, though his testimony will be limited in a manner consistent with this opinion.

It is so **ORDERED**.

Enter this 25th day of July 2017.

ALETA A. TRAUGER
United States District Judge